The **PARK NATIONAL BANK**, Appellee,

v.

**CATTANI, INC., et al.; Lahni, Appellee;**

**Lykins Oil Company, Appellant.**

[Cite as *Park Natl. Bank v. Cattani, Inc.*, 187 Ohio App.3d 186, 2010-Ohio-1291.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA2009-09-128.

Decided March 29, 2010.

Flagel & Papakirk, L.L.C., and Todd J. Flagel, for appellee Park National Bank.

Finney, Stagnaro, Saba, Patterson Co., L.P.A., Paul T. Saba, and Mark H. Klusmeier, for appellant.

Graydon, Head & Ritchey, L.L.P., Susan M. Argo, and Zachary D. Prendergast, for appellee Peter M. Lahni.

BRESSLER, Judge.

{¶ 1} Defendant-appellant, Lykins Oil Company, appeals from the Warren County Court of Common Pleas decision authorizing defendant-appellee, Peter

M. Lahni, a court-appointed receiver, to sell property at private sale free and clear of all liens and encumbrances.[1]  For the reasons outlined below, we affirm.

{¶ 2} On October 27, 2008, plaintiff-appellee, the Park National Bank, filed a complaint seeking to foreclose upon a mortgage it held on real property located at 6551 Franklin–Lebanon Road, Warren County, Ohio.  The property in dispute, upon which Lykins held a junior lien, consists of a gas station, a convenience store, and a fast-food restaurant.

{¶ 3} On May 20, 2009, after Lykins filed its answer, as well as a cross-claim and counterclaim, the trial court appointed a receiver, Lahni, to preserve and protect the property.  Within that order, the trial court stated:

{¶ 4} "The Receiver * * * may sell the Property at one or more *public or private sales* on notice to the parties to this action and such other notice as the Receiver deems appropriate."  (Emphasis added.)

{¶ 5} Lykins did not appeal from this order.

{¶ 6} Two months later, on July 20, 2009, Park National and Lahni filed a joint motion to grant the receiver authority to sell real property and personal property by private sale.  The parties' joint motion sought authorization for Lahni to sell the property at a private sale "free and clear of all liens and encumbrances," whereby any claims by those with an interest in the property would subsequently attach to the net proceeds in order of priority.

{¶ 7} On August 9, 2009, Lykins filed a motion opposing the sale as being contrary to law.  However, after holding a hearing on the joint motion, the trial court overruled Lykins's objection and authorized Lahni to proceed with the sale pursuant to the terms of the pending sales contract free and clear of all liens and encumbrances.  Prior to the closing on the property, Lykins appealed, raising one assignment of error.

{¶ 8} "The trial court erred in authorizing the receiver to enter into a private sale of real property free and clear of the liens thereon without following the process for foreclosure sales set forth in the Ohio Revised Code."

{¶ 9} In its sole assignment of error, Lykins argues that the trial court erred by authorizing Lahni, the court-appointed receiver, to sell the property at a private sale free and clear of all liens and encumbrances because such an order is contrary to law.  We disagree.

{¶ 10} A receiver, who is "appointed for the benefit of all the creditors of the property subject to the receivership," is "an officer of the court and at all

---

1.  Pursuant to Loc. R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

times subject to its order and direction." *Castlebrook Ltd. v. Dayton Properties Ltd. Partnership* (1992), 78 Ohio App.3d 340, 350, 604 N.E.2d 808; *Bank One, Cleveland, N.A. v. Grbavac* (June 15, 1989), Cuyahoga App. No. 55541, 1989 WL 65656, at *2, citing *Clarke v. Thomas* (1887), 34 Ohio St. 46, 63. In turn, the primary purpose of a receiver is to carry out the orders of the appointing court, for the "appointing court defines the powers of the receiver and, therefore, controls his actions." *Javitch v. First Union Secs., Inc.* (C.A.6, 2003), 315 F.3d 619, 626; *Natl. City Bank v. Semco, Inc.,* 183 Ohio App.3d 229, 2009-Ohio-3319, 916 N.E.2d 857, ¶ 8 .

{¶ 11} R.C. 2735.04, which details the powers of a receiver, states:

{¶ 12} "Under the control of the court which appointed him, * * * a receiver may bring and defend actions in his own name as receiver, take and keep possession of property, receive rents, collect, compound for, and compromise demands, make transfers, and *generally do such acts respecting the property as the court authorizes.*" (Emphasis added.)

{¶ 13} The Supreme Court of Ohio has interpreted R.C. 2735.04 " 'as enabling the trial court to exercise its sound judicial discretion to limit or expand a receiver's powers as it deems appropriate.' " *Norris v. Dudley,* Franklin App. No. 07AP–425, 2007-Ohio-6646, 2007 WL 4340263, ¶ 21, quoting *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 74, 573 N.E.2d 62. As a result, because R.C. Chapter 2735 "does not contain any restrictions on what the court may authorize when it issues orders regarding receivership property," we find that this includes the power to authorize a receiver, under certain circumstances, to sell property at a private sale free and clear of all liens and encumbrances.[2] *Quill v. Troutman Ents., Inc.,* Montgomery App. No. 20536, 2005-Ohio-2020, 2005 WL 994676, ¶ 34; see also *Ohio Director of Transp. v. Eastlake Land Dev. Co.,* 177 Ohio App.3d 379, 2008-Ohio-3013, 894 N.E.2d 1255, ¶ 49–51 (Gallagher, P.J., dissenting); see, e.g., *Regions Bank v. Egyptian Concrete Co.* (E.D.Mo.2009), No. 4:09–CV–1260 CAS, 2009 WL 4431133 (stating that "it has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims"); *John T. Callahan & Sons Inc. v. Dykeman Elec. Co. Inc.* (D.Mass.2003), 266 F.Supp.2d 208, 222 (noting that "notwithstanding the absence

---

2. There is broad scholarly and commentary authority to support this finding. See D. Abney, *Selling Equity Receivership Property Free and Clear of Liens and Encumbrances,* 16 Real Est. L.J. 364, 365 (1988); M. Gibbons and J. Grimes, *A Model Statute for Free–and–Clear Sales by Equity Receivers,* Am. Bankr. Inst. J. 50, (Mar., 2009) (discussing authority of trial court to authorize receiver to sell property free and clear of liens in Ohio); see also *Annotation, Power of Court to Authorize or Direct Receiver (or Trustee in Bankruptcy) to Sell Property Free from Liens,* 35 A.L.R. 255 (1925), updated by 78 A.L.R. 458 (1932) and 120 A.L.R. 921 (1939, with supplement through 2008).

of an express power to sell assets free and clear of claims," the court had the implied power to sell assets free and clear of creditors' claims in a private sale); but see *Au v. Au Rustproofing Ctr., Inc.* (July 3, 1984), Richland App. No. CA–2227, 1984 WL 4959.

{¶ 14} In receivership actions, "an appellate court will not disturb a trial court's judgment regarding a receiver's powers absent a showing of an abuse of discretion." *Quill,* 2005-Ohio-2020, 2005 WL 994676, at ¶ 34; *Campbell Investors v. TPSS Acquisition Corp.,* 152 Ohio App.3d 218, 2003-Ohio-1399, 787 N.E.2d 78, ¶ 15, citing *Celebrezze* at 73–74, 573 N.E.2d 62. An abuse of discretion is more than an error of law; rather, it suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Natl. City Bank,* 183 Ohio App.3d 229, 2009-Ohio-3319, 916 N.E.2d 857, at ¶ 8, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 15} At the hearing on Lykins's objection to the joint motion seeking authorization for the receiver to sell the property free and clear of all liens and encumbrances, Lahni testified that when he took control of the property, the gas station had ceased to operate and the convenience store was unable to renew its liquor license and that although he was able to operate the store for seven days, he was forced "shut it down" because he had "barely enough [money] to cover payroll." Lahni then testified that even though he listed the property for sale at $975,000, due to an extensive amount of unpaid taxes, as well as unforeseen issues regarding the renewal of the now expired liquor license, the best offer he received for the property was $850,000.[3] When asked if he believed the pending sales contract offer of $850,000 presented the "best opportunity for creditors to make recovery," Lahni testified affirmatively.

{¶ 16} In addition, besides Lahni's testimony, Drew Hartman, the president of Wendmiddle, L.L.C., the company in charge of operating the fast-food restaurant located on the property, testified that he saw a significant decrease in business when the accompanying gas station and convenience store were closed. Hartman then cautioned that the restaurant would remain on the property only if the sale was "done in a timely manner" and that if he was forced to wait for the completion of a sheriff's sale, he would "close that restaurant and vacate the property."

---

3. Lahni also testified that he received several offers for the property ranging from $675,000 to $875,000. However, the $875,000 offer was conditioned upon obtaining a C1 and C2 liquor license, for which none were available in the district, and having "everything clean." In addition, Lahni testified that once other prospective buyers were told that they could obtain only a D1 and D2 liquor license, which merely allows alcohol consumption on the premises, "they [would] walk away."

{¶ 17} In denying Lykins's motion objecting to the sale, the trial court found that all parties had been properly served with the motion and that "[u]rgent exigent circumstances exist that deem it necessary for the Receiver to sell the Property as soon as practicable." In addition, the court found that the pending sales contract "represents the highest and best offer for the property" and that conducting a sheriff's sale would "not generate a price greater" than the pending sales contract but instead would result in the fast-food restaurant terminating its lease, thus prompting an even greater reduction in the already sinking property value.

{¶ 18} After a thorough review of the record, and under the facts of this case, we find that the trial court did not abuse its discretion by authorizing the receiver to sell the property free and clear of liens and encumbrances. As noted above, the property has encountered a number of significant impediments that ran off virtually all potential buyers. However, despite the nearly insurmountable obstacles, Lahni, while acting for the benefit of all the creditors of the property subject to the receivership, was able to find a buyer willing to pay $850,000 for the troubled property, or, stated differently, just over 87 percent of the original asking price. In turn, just as the trial court found, and we agree, selling the property at a sheriff's sale would not generate a price greater than the pending sales contract, for it represents the highest and best offer for the property.

{¶ 19} Accordingly, because we hold that a trial court may authorize a receiver to sell property at a private sale free and clear of liens under certain circumstances, and because the pending sales contract represents the highest and best offer for the trouble property, the trial court did not abuse its discretion by authorizing Lahni to sell the property free and clear of all liens and encumbrances. Lykins's sole assignment of error is overruled.

Judgment affirmed.

Young, P.J., and Powell, J., concur.