[Cite as *Starr v. Ohio Dept. Commerce, Div. of Real Estate & Professional Licensing*, 2021-Ohio-2243.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Rick E. Starr,                                          :

        Appellant-Appellant,          :                    No. 20AP-47
                                                   (C.P.C. No. 19CV-5149)

v.                                                       :

                                                 (REGULAR CALENDAR)

Ohio Department of Commerce                              :
Division of Real Estate &
Professional Licensing,                                  :

        Appellee-Appellee.            :

---

D E C I S I O N

Rendered on June 30, 2021

---

**On brief**: *Maguire Schneider Hassay, LLP*, and *Mark R. Meterko*, for appellant. **Argued**: *Mark R. Meterko*.

**On brief**: *Dave Yost*, Attorney General, and *Hilary R. Damaser*, for appellee. **Argued**: *Hilary R. Damaser*.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Appellant, Rick E. Starr, appeals from a judgment of the Franklin County Court of Common Pleas affirming an adjudication order of appellee, the Ohio Real Estate Commission ("Commission"). For the reasons which follow, we affirm.

{¶ 2} Appellant was a real estate salesperson licensed by the Ohio Department of Commerce, Division of Real Estate and Professional Licensing ("Division"). Ricardo Easley owned a condominium located at 2985 Grandwoods Circle, Dublin, Ohio ("Grandwoods property" or "the property"). In 2016, appellant's employee contacted Easley regarding the Grandwoods property and arranged for Easley to meet appellant.

{¶ 3}   Appellant met Easley at the property on April 25, 2016. Easley informed appellant it was his intention to do a short sale[1] on the property. Easley was behind on his mortgage payments for the property, and appellant informed Easley that a short sale "would be a quick solution to selling [his] property." (Hearing Tr. at 93.) Easley also showed appellant various repairs the property needed, and informed appellant he would like to sell the property with "no money out of [his] pocket." (Hearing Tr. at 124.) Appellant told Easley he could move contractors into the Grandwoods property and have the contractors complete the needed repairs in lieu of rent.

{¶ 4}   Appellant and Easley executed an exclusive right to sell listing contract and a Multiple Listing Service ("MLS") residential work sheet by hand at their April 25, 2016 meeting. The exclusive right to sell contract granted appellant and appellant's brokerage, Realty World, the exclusive right to sell the Grandwoods property from April 25, 2016 to April 25, 2018, and provided that Easley would pay appellant's brokerage 10 percent of the selling price of the property. The MLS residential work sheet stated that the list price for the Grandwoods property would be $114,900. Appellant listed the Grandwoods property for sale on the MLS on April 26, 2016. Appellant originally listed the property for $114,900 but then increased the list price to $119,000.

{¶ 5}   On April 27, 2016, appellant and Easley executed an agency disclosure statement and a real estate purchase contract electronically. The purchase contract stated that TRST, LLC ("TRST") would purchase the Grandwoods property from Easley for $82,000. The agency disclosure statement identified appellant as a member of TRST. The purchase was "contingent upon the seller's lender approving of a short sale on this property." (State's Ex. I.) The purchase contract provided that TRST could rent the property from Easley for $1 per month through the time of closing and "sublease the property if desired." (State's Ex. I.) On May 4, 2016, appellant sent Easley a check for $8 as payment for eight months rent at the Grandwoods property. Easley did not cash the check.

---

[1] A "short sale" refers to the situation where "a mortgage holder allows the homeowner to sell his or her property for less than the full amount due on the mortgage loan secured by the property," and the mortgage holder then agrees to release the mortgage lien in return for the proceeds from the sale. *Wells Fargo Bank, N.A. v. Perkins*, 10th Dist. No. 10AP-1022, 2011-Ohio-3790, ¶ 21, citing *Cattell v. Lake Cty. Bd. of Revision*, 11th Dist. No. 2009-L-161, 2010-Ohio-4426, ¶ 23.

{¶ 6} On May 1, 2016, appellant signed a residential property management agreement on behalf of TRST. The agreement identified TRST as the owner of the Grandwoods property. Through the agreement, TRST hired Real Estate Stars Property Management to manage the property. Appellant owned Real Estate Stars Property Management.

{¶ 7} On May 16, 2016, Jared Gibbons and his fiancée Rosa Krichbaum executed a month-to-month lease agreement for the Grandwoods property. The lease identified TRST as the lessor of the property. Kim Forrester, appellant's employee, signed the lease agreement on behalf of TRST. The lease specified that the monthly rent of $1,070 was payable to Real Estate Stars Property Management.

{¶ 8} On May 26, 2016, appellant and Easley signed a residential property management agreement for the Grandwoods property electronically. The May 26, 2016 property management agreement similarly employed Real Estate Stars Property Management to manage the Grandwoods property, but identified both Easley and TRST as owners of the Grandwoods property. Easley stated that he signed the documents appellant sent to him without reading them because he believed appellant was his "agent" and acting in Easley's "best interests." (Hearing Tr. at 159-60.)

{¶ 9} Although Gibbons and Krichbaum were not contractors, Gibbons did "cosmetic" work on the Grandwoods property in exchange for credit toward rent. (Hearing Tr. at 193.) Gibbons explained that he "patch[ed] the walls, paint[ed], fix[ed] cabinets[.] * * * Just the basic all-around maintenance." (Hearing Tr. at 193.) Forrester instructed Gibbons to submit a bill for the work he performed on the property to Alliance Home Services Property Management ("Alliance Home Services"). Appellant owned Alliance Home Services.

{¶ 10} Easley discovered that Gibbons and Krichbaum were living in the Grandwoods property when he drove by the property and saw people inside. Easley went to the door and identified himself as the property owner. Gibbons informed Forrester that an individual named Easley had stopped by the property and identified himself as the owner. Forrester told Gibbons "not to talk to [Easley]" and that Easley did not "have any rights in the property." (Hearing Tr. at 214.) Gibbons believed appellant or appellant's company owned the Grandwoods property.

{¶ 11} In the middle of June 2016, Gibbons and Krichbaum were instructed to show the Grandwoods property to "investors" who were considering "buy[ing] the property." (Hearing Tr. at 216.) However, when the tenants showed the property as instructed, they discovered the individuals looking at the property were not investors. Gibbons then looked on the Franklin County Auditor's website and discovered that Easley was listed as the owner of the Grandwoods property.

{¶ 12} Easley eventually provided Gibbons with a letter stating that appellant "had been fired from any kind of agreement" regarding the Grandwoods property. (Hearing Tr. at 218-19.) Gibbons and Krichbaum moved out of the property in early September 2016. Appellant eventually sent Easley an invoice from Alliance Home Services for repairs made to the Grandwoods property. Easley did not pay the bill. TRST never purchased the property from Easley.

{¶ 13} Easley filed a complaint against appellant with the Division. Division Investigator Sandra Gagle investigated the complaint. On September 21, 2018, the Division sent appellant a notification of formal hearing. The notification informed appellant that the Division's investigation revealed reasonable and substantial evidence of acts in violation of R.C. Chapter 4735 and that, if the violations were proven, disciplinary action could be taken against appellant's license. The notification identified four specific charges against appellant.

{¶ 14} On February 4, 2019, a hearing examiner held a hearing on the charges. Counsel for the Division presented testimony from Gagle, Easley, and Gibbons along with documentary evidence. Appellant appeared at the hearing pro se. Appellant cross-examined the Division's witnesses, but did not testify or present any evidence.

{¶ 15} The hearing examiner issued a report on March 22, 2019 containing findings of fact and conclusions of law. While the hearing examiner found it "not believable that Easley would rely on a person [appellant] whom he just met * * * without paying more attention to the documents that were presented to him," the hearing examiner found that appellant "acted improperly" as he "blurred the lines and overreached" and "failed to properly represent Easley's interests." (Hearing Examiner Report at 14.) The hearing examiner concluded that appellant committed the violations as alleged in the notification of formal hearing. Appellant filed objections to the hearing examiner's report.

{¶ 16} The hearing examiner's report went before the Commission for review on June 5, 2019. Appellant did not appear for the hearing. The Commission moved to adopt the hearing examiner's findings of fact and conclusions of law and to revoke appellant's real estate salesperson license and impose a monetary fine on all four charges. On June 12, 2019, the Commission issued an adjudication order formalizing its decision.

{¶ 17} Appellant filed a timely R.C. 119.12 appeal of the Commission's adjudication order to the common pleas court. On October 30, 2019, appellant filed a motion seeking to admit his affidavit as additional evidence pursuant to R.C. 119.12(K). The common pleas court denied the motion. On December 23, 2019, the common pleas court issued a decision and entry affirming the Commission's adjudication order.

{¶ 18} Appellant appeals, assigning the following seven assignments of error for our review:

> [I.] The Trial Court erred in concluding that the Real Estate Commission's adjudication order was in accordance with law because Starr's due process rights were violated due to a lack of notice and/or incorrect notice about the time of the hearing before the Real Estate Commission.
>
> [II.] The Trial Court erred in denying Starr's motion to admit additional evidence.
>
> [III.] The Trial Court erred in concluding that the Real Estate Commission's adjudication order was supported by reliable, probative and substantial evidence and that the adjudication order was in accordance with law as to Charge 1 of the Schedule A of the Notification of Formal Hearing.
>
> [IV.] The Trial Court erred in concluding that the Real Estate Commission's adjudication order was supported by reliable, probative and substantial evidence and that the adjudication order was in accordance with law as to Charge 2 of the Schedule A of the Notification of Formal Hearing.
>
> [V.] The Trial Court erred in concluding that the Real Estate Commission's adjudication order was supported by reliable, probative and substantial evidence and that the adjudication order was in accordance with law as to Charge 3 of the Schedule A of the Notification of Formal Hearing.
>
> [VI.] The Trial Court erred in concluding that the Real Estate Commission's adjudication order was supported by reliable,

probative and substantial evidence and that the adjudication order was in accordance with law as to Charge 4 of the Schedule A of the Notification of Formal Hearing.

[VII.] The Trial Court erred in concluding that the Real Estate Commission's adjudication order was in accordance with law where the record indicates that not all members of the Real Estate Commission reviewed Starr's written objections.

{¶ 19} In an administrative appeal pursuant to R.C. 119.12, the common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). Reliable, probative, and substantial evidence has been defined as follows:

(1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

*Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 20} The trial court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The trial court "must give due deference to the administrative resolution of evidentiary conflicts," although "the findings of the agency are by no means conclusive." *Conrad* at 111. The common pleas court conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), citing R.C. 119.12.

{¶ 21} An appellate court's review of an administrative decision is more limited than that of the common pleas court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its

discretion. *Id.*; *Lorain City Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Absent an abuse of discretion, this court may not substitute its judgment for that of the administrative agency or the trial court. *Pons* at 621. However, on the question of whether the agency's order was in accordance with the law, this court's review is plenary. *Kistler v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 04AP-1095, 2006-Ohio-3308, ¶ 9.

{¶ 22} Appellant's first assignment of error asserts the common pleas court erred in finding the Commission's adjudication order in accordance with law because the administrative proceedings failed to comply with due process. Due process rights guaranteed under the United States and Ohio Constitutions apply in administrative proceedings. *MacConnell v. Ohio Dept. of Commerce*, 10th Dist. No. 04AP-433, 2005-Ohio-1960, ¶ 24. " 'Although due process is flexible and calls for such procedural protections as the particular situation demands, the basic requirements of procedural due process are notice and an opportunity to be heard. (Citations omitted.).' " *Edmands v. State Med. Bd. of Ohio*, 10th Dist. No. 14AP-778, 2015-Ohio-2658, ¶ 23, quoting *Fairfield Cty. Bd. of Commrs. v. Nally*, 143 Ohio St.3d 93, 2015-Ohio-991, ¶ 42. "[N]otice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. (Citations omitted.).' " *Id.*, quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

{¶ 23} Appellant contends he was deprived due process because he did not receive notice of the time the Commission would hear his case on June 5, 2019. Shortly after the administrative proceedings began, appellant sent the Division an e-mail titled "Updated Home Address for Rick Starr." (State's Ex. D.) The e-mail identified appellant's home address as Ballantrae Place, Dublin, Ohio. On May 15, 2019, the Division sent a notice of review to appellant's Ballantrae Place address via certified mail. The notice informed appellant that the Commission would review his case on "**June 5, 2019 at 10:45 a.m**." (Emphasis sic.) (May 15, 2019 Notice of Review.) The certified mail return receipt for the notice of review was signed and returned to the Division.

{¶ 24} R.C. 119.07 obligates an administrative agency to provide a party with notice of a hearing "by registered mail, return receipt requested." "If a notice is sent by certified mail, return receipt requested, and thereafter a signed receipt is returned to the sender, a prima facie case of delivery to the addressee is established." *New Co-Operative Co. v. Liquor Control Comm.*, 10th Dist. No. 01AP-1124, 2002-Ohio-2244, ¶ 8, citing *Tripodi v. Liquor Control Comm.*, 21 Ohio App.2d 110, 112 (7th Dist.1970). *See Schindler Elevator Corp. v. Tracy*, 84 Ohio St.3d 496, 498 (1999) (stating that " 'registered mail' and 'certified mail' are interchangeable terms"). Certified mail is "[e]videnced by return receipt signed by any person." Civ.R. 4.1(A)(1)(a). Thus, valid service of process by certified mail "is presumed when the envelope is received by *any person* at the defendant's address; the recipient need not be an agent of the defendant." (Emphasis sic.) *Oak Grove Manor v. Ohio Dept. of Human Servs.*, 10th Dist. No. 01AP-71 (Oct. 23, 2001), citing *Ohio Civ. Rights Comm. v. First Am. Properties, Inc.*, 113 Ohio App.3d 233, 237 (2d Dist.1996). As notice of the June 5, 2019 10:45 a.m. hearing was sent to appellant's address via certified mail, and a signed return receipt for the notice was then returned to the Division, a prima facie case of delivery was established in the present case.

{¶ 25} The presumption of valid service "is rebuttable by sufficient evidence demonstrating non-service." *New Co-Operative* at ¶ 9. To determine whether a party has sufficiently rebutted the presumption of valid service, the trial court may "assess the credibility and competency of the submitted evidence of non-service." *Id.*, citing *Taris v. Jordan*, 10th Dist. No. 95APE08-1075 (Feb. 20, 1996). "An affidavit, by itself, stating that appellant did not receive service, may not be sufficient to rebut the presumption without any other evidence of a failure of service." *Id.*, citing *Oxley v. Zacks*, 10th Dist. No. 00AP-247 (Sept. 29, 2000). *See Ross v. Olsavsky*, 7th Dist. No. 09 MA 95, 2010-Ohio-1310, ¶ 17 (stating that a trial court "is not bound to accept the sworn statement" in a "self-serving affidavit asserting that the party did not receive the complaint"). An appellate court reviews a trial court's decision regarding the sufficiency of service of process for an abuse of discretion. *New Co-Operative* at ¶ 7, citing *C & H Investors, Inc. v. Liquor Control Comm.*, 10th Dist. No. 98AP-1519 (Dec. 9, 1999).

{¶ 26} Although the common pleas court denied appellant's motion to admit his affidavit as additional evidence, the court considered the affidavit in its analysis of

appellant's due process argument. *See Edmands* at ¶ 19 (observing that the waiver doctrine does not apply to "challenges to the content or service of [an administrative agency's] notice of opportunity" for a hearing because "the first opportunity for the party to raise [such] an argument" occurs in the "appeal to the common pleas court"). Appellant averred in his affidavit that, although he initially "did not know what time" the Commission would review his case "on June 5, 2019," a week before the hearing he "received a call from someone identifying themselves as being from the Division" who told appellant the Commission would review his case "at 1:00 p.m." (Starr Aff. at ¶ 3-5.) Appellant claimed he relied on the statement from the caller and arrived for his hearing around noon on June 5, 2019. Appellant further averred that the signature on the certified mail receipt was "not [his] signature," and he "did not sign for any certified mail" stating the Commission would hear his case at 10:45 a.m. on June 5, 2019. (Starr Aff. at ¶ 8-9.)

{¶ 27} The court determined that the statement in appellant's affidavit acknowledging the hearing would occur sometime on June 5, 2019 "implicitly admit[ted] to the fact that [appellant] had notice of the Commission's hearing." (Decision & Entry Denying Appellant's Request for Admission of Add. Evid. at 3.) Thus, the court stated that appellant's affidavit conflicted with appellant's contention that he did not receive notice of the Commission's hearing. The court found appellant's statement claiming that someone called and told him the Commission would hear his case at 1:00 p.m. was "not an acknowledged fact." (Decision & Entry Affirming the June 12, 2019 Adjudication Order of the Commission at 13.) The court concluded that appellant could not "claim lack of notice when the certified record and his own assertions point to the fact that he had actual notice of the hearing and its start time." (Decision & Entry Affirming the June 12, 2019 Adjudication Order of the Commission at 13.) The common pleas court's statements demonstrate the court found appellant's affidavit lacked credibility.

{¶ 28} We find no abuse of discretion in the common pleas court's assessment of appellant's affidavit. The affidavit fails to explain how appellant was aware the Commission would review his case on June 5, 2019, but unaware of the time. The May 15, 2019 notice of review informed appellant both that the hearing would occur on June 5, 2019 and at 10:45 a.m. Furthermore, the certified record demonstrates the Division served numerous documents to appellant's Ballantrae Place address throughout the administrative

proceedings without issue. *See Taris* (finding the defendant's affidavit claiming failure of service to his home address lacked credibility, as "defendant had had no problems with mail delivery to his home"). Appellant offered no explanation regarding who else may have signed the certified mail return receipt for the May 15, 2019 notice of review that was delivered to his home address. *See Ross* at ¶ 21 (finding that the appellant failed to "overcome the rebuttable presumption of service when considering that the certified mail was sent to her address and signed by a name that [was] very similar, if not her daughter's"). *Compare TCC Mgt. v. Clapp*, 10th Dist. No. 05AP-42, 2005-Ohio-4357, ¶ 16 (finding the defendant/wife rebutted the presumption of valid service, as she submitted "the affidavit of her estranged husband who signed for the certified mail addressed to [her]" and admitted that "he did not advise [defendant] of the lawsuit against her and did not give [her] a copy of the summons or complaint"). Accordingly, appellant failed to rebut the presumption of proper service.

{¶ 29} As the record demonstrates appellant received notice of the date and time of the Commission's hearing, appellant fails to demonstrate he was deprived of due process in the administrative proceedings. Appellant's first assignment of error is overruled.

{¶ 30} Appellant's second assignment of error asserts the common pleas court erred in denying his motion to admit additional evidence. In an R.C. Chapter 119 appeal, the common pleas court "is confined to the record as certified to it by the agency." R.C. 119.12(K). However, the court "may grant a request for the admission of additional evidence when satisfied that the additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency." R.C. 119.12(K). The common pleas court concluded that appellant's affidavit did not constitute newly discovered evidence.

{¶ 31} "The decision to admit additional evidence lies within the discretion of the court of common pleas, but only after the court has determined that the evidence is newly discovered." *Cincinnati City School Dist. v. State Bd. of Edn.*, 113 Ohio App.3d 305, 317 (10th Dist.1996), citing *Ganley, Inc. v. Ohio Motor Vehicle Dealers Bd.*, 10th Dist. No. 93APE12-1646 (Sept. 29, 1994). " 'Newly discovered' evidence under R.C. 119.12 pertains to evidence that existed at the time of the administrative hearing; the term does not refer to newly created evidence, such as evidence created after the hearing." *Beach v. Ohio Bd. of*

*Nursing*, 10th Dist. No. 10AP-940, 2011-Ohio-3451, ¶ 16, citing *Golden Christian Academy v. Zelman*, 144 Ohio App.3d 513, 517 (10th Dist.2001). An affidavit created after an administrative hearing constitutes newly created rather than newly discovered evidence. *Beach* at ¶ 17; *Burden v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 11AP-832, 2012-Ohio-1552, ¶ 37.

**{¶ 32}** Appellant's affidavit was notarized on October 28, 2019, well after the administrative hearing in the present case. Accordingly, the common pleas court did not abuse its discretion in denying appellant's motion to admit additional evidence. Appellant's second assignment of error is overruled.

**{¶ 33}** Appellant's third assignment of error asserts the common pleas court erred in finding the Commission's adjudication order was supported by reliable, probative, and substantial evidence and in accordance with law as to Charge 1. Charge 1, as stated on the notification of formal hearing, provided as follows:

> On or about April 25, 2016, you entered an exclusive right to sell contract with Ricardo Easley that failed to contain a list price or an address for the subject property. Accordingly, you violated Ohio Revised Code Section 4735.18(A)(6), misconduct.

(State's Ex. A, Notification of Formal Hearing.)

**{¶ 34}** The exclusive right to sell contract was a pre-printed standard form contract containing blank spaces for the parties to fill in. Although appellant and Easley filled in several of the blank spaces on the agreement, they did not fill in the spaces for the property address or the proposed list price for the property. The common pleas court found the Commission's conclusion that the missing terms amounted to "a violation of the code of conduct" of the real estate industry "not an unreasonable or repugnant interpretation." (Decision & Entry Affirming the June 12, 2019 Adjudication Order of the Commission at 11.)

**{¶ 35}** R.C. 4735.18(A)(6) permits the Commission to "impose disciplinary sanctions upon any licensee" who is found guilty of "[d]ishonest or illegal dealing, gross negligence, incompetency, or misconduct." "Misconduct" under R.C. 4735.18(A)(6) "includes unprofessional conduct or that conduct involving any breach of duty which is prohibited under professional codes of ethics, or conduct which is contrary to law.

Willfulness, good intentions or actual harm to a party are not necessarily controlling factors in such license suspension proceedings." *Richard T. Kiko Agency v. Ohio Dept. of Commerce*, 48 Ohio St.3d 74, 77 (1990).

{¶ 36} As the right to engage in the real estate business is in the nature of a privilege granted by the state, the state has an interest in promoting the character, honesty, and intellectual competence of real estate licensees. *Boggs v. Ohio Real Estate Comm., Div. of Real Estate & Professional Licensing*, 186 Ohio App.3d 96, 2009-Ohio-6325, ¶ 31 (10th Dist.), citing *Richard T. Kiko Agency* at 76. "To ensure these standards are met, the General Assembly authorized the [C]ommission to regulate the real estate profession and also adopt Canons of Ethics by which real estate professional are to abide." *Stone v. Ohio Real Estate Comm.*, 10th Dist. No. 20AP-96, 2021-Ohio-809, ¶ 14, citing *Boggs* at ¶ 31. "In a disciplinary action, the [C]ommission may rely on its own expertise in deciding whether a licensee engaged in conduct that violates the laws, rules or standards of the real estate industry." *Boggs* at ¶ 33. A reviewing court must accord deference to the Commission's determination that certain conduct is contrary to law or a standard of practice in the real estate industry. *Id. Accord Glover v. Ohio Dept. of Commerce*, 10th Dist. No. 09AP-91, 2009-Ohio-6987, ¶ 23, 25.

{¶ 37} Appellant contends the Commission's finding as to Charge 1 was contrary to law because the exclusive right to sell contract satisfied the requirements of R.C. 4735.55. R.C. 4735.55 provides that "[e]ach written agency agreement shall contain all of the following:" (1) an expiration date, (2) a statement required by the Ohio and Federal fair housing laws, (3) a statement defining blockbusting and stating that it is illegal, and (4) a copy of the United States Department of Housing and Urban Development Equal Housing Opportunity logotype. However, an exclusive right to sell contract must include certain terms beyond the four terms stated in R.C. 4735.55. R.C. 4735.01(U) defines an "[e]xclusive right to sell or lease listing agreement" as an "agency agreement between a seller and broker that meets the requirements of [R.C. 4735.55] and does both the following:" (1) grants the broker the exclusive right to represent the seller in the sale or lease of "the seller's property," and (2) provides the broker will be compensated if any person produces a purchaser or tenant for the property during the term of the agreement. Thus, an exclusive right to sell agreement grants the right to sell or lease the seller's property, not unidentified property.

{¶ 38} Appellant further contends that the Commission needed to notify him of his obligation to include the address and list price in the exclusive right to sell contract before it could sanction him for omitting the terms. In *Hughes v. Ohio Div. of Real Estate*, 86 Ohio App.3d 757, 762 (2d Dist.1993), the court held that, before the Commission may prohibit conduct that is not inherently wrong or illegal, "it should give a person of ordinary intelligence reasonable notice that his contemplated conduct is forbidden."

{¶ 39} However, the Commission is under no obligation to "list every possible real estate brokerage [or salesperson] violation before it could enforce its responsibilities." *Hughes v. Ohio Real Estate Comm.*, 8th Dist. No. 74480 (July 22, 1999). Indeed, because it "would be impossible for lawmakers and rulemakers to spell out in detail every type of conduct that constitutes misconduct by a real estate broker [or salesperson]," the "Commission must be given considerable discretion in determining whether certain conduct is violative of the standard of practice in the industry." *Id.* In *Hughes v. Ohio Real Estate Comm.*, the court concluded that, although there was "no specific regulatory provision prohibiting [the licensee's] conduct," as the licensee "failed to show" his conduct was "an acceptable practice," the Commission's conclusion that the conduct constituted misconduct was in accordance with law. *See also Barlow v. Ohio Dept. of Commerce*, 10th Dist. No. 09AP-1050, 2010-Ohio-3842, ¶ 22, 24.

{¶ 40} Appellant fails to demonstrate that it was an acceptable practice for a real estate salesperson to enter into an exclusive right to sell contract which failed to identify the property to be sold or the list price for the property. Moreover, a person of ordinary intelligence would not require notice informing them the blank spaces on a standard form contract are to be filled in. The Commission could rely on its expertise of the real estate industry to conclude that appellant's failure to include the address and list price terms in the exclusive right to sell contract violated the standards of practice for the real estate industry.

{¶ 41} Finally, the Commission asserts that an exclusive right to sell contract "cannot be valid without the essential subject matter of the contract, including the property to be sold and the price for which it will be sold." (Appellee's Brief at 24.) In response, appellant contends if the failure to include the address and price terms render the exclusive

right to sell contract invalid, Charge 1 and the remaining charges which rely on the existence of the exclusive right to sell contract necessarily fail as a matter of law.

{¶ 42} "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991). The construction of a written contract is a matter of law. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. "[J]udicial examination of [a] contract begins with the fundamental objective of ascertaining and giving effect to the intent of the parties at the time they executed the agreement." *CosmetiCredit, LLC v. World Fin. Network Natl. Bank*, 10th Dist. No. 14AP-32, 2014-Ohio-5301, ¶ 13. The parties' intent is generally presumed to reside in the language the parties chose to use in the agreement. *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, ¶ 12. When the language of the contract is clear, courts look no further than the contract to find the intent of the parties. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992), syllabus.

{¶ 43} The exclusive right to sell contract granted appellant and appellant's brokerage the right to sell an unidentified property at an unidentified price. Accordingly, the failure to include the address and price terms in the contract rendered the contract ambiguous and extrinsic evidence could be considered to explain what the parties intended the missing terms to state. *See Young v. Louisville Title Agency, Inc.*, 6th Dist. No. 91WD097 (Jan. 15, 1993) (concluding the parties' failure to fill in a blank space on a pre-printed real estate purchase agreement created an "ambiguity on the face of the contract" and thus extrinsic evidence could be considered to ascertain the parties' intent).

{¶ 44} The MLS residential worksheet identified the address for the Grandwoods property and stated that the list price for the property would be $114,900. Appellant and Easley executed the MLS residential worksheet and the exclusive right to sell contract during their April 25, 2016 meeting. *See Edward A. Kemmler Mem. Found. v. 691/733*

*E. Dublin-Granville Rd. Co.*, 62 Ohio St.3d 494, 499 (1992) (holding that it is a "general contract principle in Ohio law that writings executed as part of the same transaction should be read together"); *Ctr. Ridge Ganley, Inc. v. Stinn*, 31 Ohio St.3d 310, 314 (1987). Easley understood that the exclusive right to sell contract pertained to the Grandwoods property. After they signed the exclusive right to sell contract, appellant listed the Grandwoods property for sale on the MLS with an original list price of $114,900.

{¶ 45} Thus, the extrinsic evidence demonstrates the parties intended for the exclusive right to sell contract to apply to the Grandwoods property and for the list price to be $114,900. Accordingly, the exclusive right to sell contract was an enforceable agreement. While principles of contract law demonstrate the exclusive right to sell contract was enforceable despite the missing terms, the Commission could rely on its expertise of the real estate industry to conclude that appellant's failure to include the address and price terms in the contract amounted to unprofessional conduct in violation of R.C. 4735.18(A)(6).

{¶ 46} The common pleas court did not abuse its discretion in finding the Commission's adjudication order was supported by reliable, probative, and substantial evidence and in accordance with law as to Charge 1. Appellant's third assignment of error is overruled.

{¶ 47} Appellant's fourth assignment of error asserts the common pleas court erred in finding the Commission's adjudication order was supported by reliable, probative and substantial evidence and in accordance with law as to Charge 2. Charge 2 provided as follows:

> On or about April 27, 2016, you created an illegal dual agency for your brokerage when you submitted an offer to purchase the subject property for TRST LLC, a LLC, which you were an officer or member, while your brokerage remained [the] listing brokerage for the subject property. Accordingly, you violated Ohio Revised Code Section 4735.18(A)(9) as that section incorporates Ohio Revised Code Section 4735.71(C) or you violated Ohio Revised Code Section 4735.18(A)(6), misconduct as that section incorporates the Canons of Ethics for the Real Estate Industry, Section I, Article 1.

(State's Ex. A, Notification of Formal Hearing.)

{¶ 48} R.C. 4735.18(A)(9) permits the Commission to discipline a licensee who is found guilty of "[h]aving violated or failed to comply with any provisions of sections 4735.51 to 4735.74 of the Revised Code." R.C. 4735.71(C) provides as follows:

> No salesperson or broker licensed under this chapter shall participate in a dual agency relationship in which the licensee is a party to the transaction, either personally or as an officer or member of a partnership, association, limited liability company, limited liability partnership, or corporation that has an interest in the real property that is the subject of the transaction or an entity that has an intention of purchasing, leasing, or exchanging the real property.

{¶ 49} A "dual agent" is defined as a licensee or a brokerage that "represents both the purchaser and the seller as clients in the same real estate transaction." R.C. 4735.70(A) and (B). Section I, Article 1 of the Canons of Ethics for the Real Estate Industry provides as follows:

> Licensing as a real estate broker or salesman indicates to the public at large that the individual so designated has special expertise in real estate matters and is subject to high standards of conduct in the licensee's business and personal affairs. The licensee should endeavor to maintain and establish high standards of professional conduct and integrity in dealings with members of the public as well as with fellow licensees and, further, seek to avoid even the appearance of impropriety in any activities as a licensee.

https://www.com.ohio.gov/documents/RE_canons_of_ethics.pdf (accessed June 29, 2021).

{¶ 50} The Commission adopted the hearing examiner's conclusion that appellant violated R.C. 4735.71(C) and Section I, Article 1 of the Canons of Ethics for the Real Estate Industry by the conduct alleged in the notification of formal hearing. The common pleas court concluded that, as the exclusive right to sell contract "was still in effect" and had "not been vacated" when appellant signed the real estate purchase contract on behalf of TRST, the Commission's adjudication order was supported by reliable, probative, and substantial evidence and in accordance with law as to Count 2. (Decision & Entry Affirming the June 12, 2019 Adjudication Order of the Commission at 11.)

{¶ 51} Appellant contends he did not participate in an illegal dual agency because the agency disclosure statement disclosed he represented only TRST in the purchase

transaction. The agency disclosure statement identified appellant as a member of TRST and stated that appellant and appellant's brokerage represented only TRST in the purchase transaction as a client. The agency disclosure statement further stated that Easley was "not represented and agrees to represent his/her own best interest." (State's Ex. H.) However, the exclusive right to sell contract, which appellant and Easley had executed two days prior, remained in effect when the parties executed the purchase contract and agency disclosure statement. Pursuant to the exclusive right to sell contract, appellant and appellant's brokerage represented Easley in the sale of the Grandwoods property.

{¶ 52} Appellant contends that, by signing the agency disclosure statement, Easley gave his informed written consent for appellant to change who he represented in the purchase transaction. Appellant notes that the agency disclosure statement stated the parties "consent[ed] to the above relationships as [they] enter[ed] into this real estate transaction." (State's Ex. H.) R.C. 4735.59 provides that "[t]o change the party a licensee represents in a real estate transaction after an agency disclosure statement has been signed and dated or following verbal disclosure of the agency relationship, the licensee shall obtain written consent from the party originally represented to represent another party in the transaction." *See Wightman v. Ohio Real Estate Comm.*, 195 Ohio App.3d 561, 2011-Ohio-1816, ¶ 40 (10th Dist.) (stating that "[b]y the plain language of R.C. 4735.59, it only governs situations where a licensee discontinues his representation of one party to represent another party to the real estate transaction"). However, there is nothing in the agency disclosure statement stating that appellant was discontinuing his representation of Easley in order to begin representing TRST. Although the agency disclosure statement stated that appellant represented TRST and that Easley was unrepresented, the document did not address the prior existing agency relationship between appellant and Easley.

{¶ 53} Thus, in the absence of a statement terminating appellant's pre-existing representation of Easley, appellant remained Easley's agent for the Grandwoods property. The exclusive right to sell contract, agency disclosure statement, and purchase contract demonstrated appellant was representing both Easley and TRST in the purchase transaction for the Grandwoods property, and that appellant was a party to the transaction due to his membership in TRST. As R.C. 4735.71(C) prohibits a licensee from representing both the buyer and seller in a real estate transaction in which the licensee is also a party to

the transaction, the Commission's conclusion that appellant violated R.C. 4735.71(C) was supported by reliable, probative, and substantial evidence and in accordance with law. Furthermore, the Commission's conclusion that appellant's conduct in the present case violated R.C. 4735.71(C) was entitled to deference. *Boggs* at ¶ 33; *iNest Realty, Inc. v. Ohio Dept. of Commerce*, 10th Dist. No. 04AP-871, 2005-Ohio-3621, ¶ 21. *See also In re 138 Mazal*, 117 Ohio App.3d 679, 685 (10th Dist.1997).

{¶ 54} Appellant further contends that Charge 2 impermissibly sought to hold him responsible for the actions of his brokerage. However, appellant signed the exclusive right to sell agreement, the agency disclosure statement, and the purchase contract. The exclusive right to sell contract granted appellant and his brokerage the exclusive right to sell the Grandwoods property, and the agency disclosure statement stated that appellant and his brokerage represented TRST in the purchase transaction. Thus, Charge 2 held appellant responsible for his actions which created an illegal dual agency, not the actions of his brokerage.

{¶ 55} Charge 2 alternatively stated that appellant's conduct violated Section I, Article 1 of the Canons of Ethics for the Real Estate Industry. The conflicting statements in the various documents regarding who appellant was representing in the purchase transaction created an appearance of impropriety and failed to maintain high standards of professional conduct. Indeed, the statement in the agency disclosure statement indicating that Easley was unrepresented directly conflicted with the exclusive right to sell contract. Even after signing the agency disclosure statement, appellant never attempted to terminate his representation of Easley. Appellant remained the listing agent for the Grandwoods property on the MLS and continued to seek an independent purchaser for the property throughout the summer of 2016. The Commission could rely on its expertise of the industry to conclude that appellant's conduct described in Charge 2 violated Section I, Article 1 of the Canons of Ethics.

{¶ 56} The common pleas court did not abuse its discretion in finding the Commission's adjudication order was supported by reliable, probative, and substantial evidence and in accordance with law as to Charge 2. Appellant's fourth assignment of error is overruled.

{¶ 57} Appellant's fifth assignment of error asserts the common pleas court erred in finding the Commission's adjudication order was supported by reliable, probative, and substantial evidence and in accordance with law as to Charge 3. Charge 3 provided as follows:

> Between on or about April 25, 2016 and on or about September 1, 2016, you failed to maintain high standards of professional conduct and integrity in dealings with members of the public, or you failed to avoid the appearance of impropriety as a licensee by and through your agreements with Ricardo Easley related to the selling, purchasing, managing, leasing and/or repairing of the subject property.
>
> This conduct includes the conduct outlined in charge 1 and charge 2 and includes the following: You, Rick Starr, or a company owned or controlled by you, attempted to purchase the subject property for $82,000.00 when you advertised the subject property in the MLS on 4/26/16 for an original list price of $114,900 and a list price of $119,000.00.
>
> On 4/27/16, executed an agency disclosure statement identifying, you or a company that you owned or controlled as the purchaser, and you or a company you owned or controlled, as the agent for the purchaser in conflict with the Exclusive Right to Sell Agreement executed on 4/25/16.
>
> The Right to Remedy and the Agreement to Remedy Period in the purchase contract for the subject property ran simultaneously, which did not provide the seller with a reasonable opportunity to cure or further negotiate the contract terms.
>
> The purchase contract for the subject property permitted you, or a company owned or controlled by you, to lease the property for $1.00 and to sublease the subject property with rental proceeds going to you or a company owned or controlled by you.
>
> You, or a company owned or controlled by you, entered into a property management agreement with Easley, the owner of the subject property, and falsely portrayed yourself, or a company you owned or controlled by you, as the owner of the property.
>
> The property management agreement with Real Estate Stars Property Management, a company that you owned or

controlled, and Ricardo Easley, permitted another company, Alliance Home Services, a company that you owned or controlled, to take advantage of Easley by overcharging for services rendered.

Accordingly, you violated Ohio Revised Code Section 4735.18(A)(6), misconduct as that section incorporates the Canons of Ethics for the Real Estate Industry, Section 1, Article 1.

(State's Ex. A, Notification of Formal Hearing.)

{¶ 58} Appellant asserts that "all parts of Charge 3 should fail because the charge is essentially attempting to regulate the terms of the * * * private agreements between TRST and Easley." (Appellant's Brief at 40.) However, a person holding a real estate license "is held to a higher standard of competency and fairness than is a lay member of the public in the market place." *Richard T. Kiko Agency* at 76. Moreover, as Easley's agent, appellant owed Easley fiduciary duties when the parties executed the purchase contract and the property management agreement. *See* R.C. 4735.62(A) (providing that a licensee "shall be a fiduciary of the client and shall use the licensee's best efforts to further the interest of the client"); *Parahoo v. Mancini*, 10th Dist. No. 97APE08-1071 (Apr. 14, 1998), quoting *Salem v. DeWitt-Jenkins Realty Co.*, 65 Ohio Law Abs. 1, 4 (1952) (stating it is "axiomatic that a real estate agent 'shall exercise fidelity and good faith toward his principal in all matters that fall within the sphere of his employment' ").

{¶ 59} The Commission adopted the hearing examiner's conclusion that appellant violated Section I, Article 1 of the Canons of Ethics by the conduct described in Charge 3. The common pleas court found the Commission's adjudication order was supported by reliable, probative, and substantial evidence and in accordance with law as to Charge 3. Pursuant to our analysis of appellant's third and fourth assignments of error, we find the portion of Charge 3 incorporating the same conduct as Charges 1 and 2 supported by reliable, probative, and substantial evidence and in accordance with law.

{¶ 60} The rental provision in the purchase contract permitted TRST to sublease the Grandwoods property for any amount, while renting the property from Easley for the nominal amount of $1 per month. The remedy provisions in the purchase contract stated that TRST had until closing to inspect the property and submit a request to remedy to Easley, and provided that the contract would terminate if the parties did not reach an

agreement to remedy the unsatisfactory conditions by closing. Thus, the remedy provisions essentially provided TRST with the ability to unilaterally terminate the purchase contract. The Commission reasonably concluded that the rental and remedy provisions in the purchase contract, which benefitted appellant's company at Easley's expense, violated appellant's ethical obligations in Section I, Article 1 of the Canons of Ethics.

{¶ 61} Appellant contends the difference between the $119,000 list price and the $82,000 purchase price could not support a finding of misconduct, as there was no evidence of the actual market value of the Grandwoods property. However, the Commission could rely on its expertise of the real estate industry to conclude that appellant's company's offer to purchase the Grandwoods property for $37,000 less than the list price, while appellant was the seller's agent for the property, failed to maintain high standards of professional conduct, and amounted to an appearance of impropriety. *See Gibson v. Real Estate Comm.*, 10th Dist. No. 81AP-811 (Apr. 22, 1982) (finding the Commission's order suspending a broker's license supported by reliable, probative, and substantial evidence as the broker "accepted a six-month exclusive listing to sell a house for $20,000" and then induced the seller "to sell the property to [the broker's] corporation * * * for $12,832").

{¶ 62} Appellant also asserts that the $82,000 offer did not amount to misconduct because an offer "was necessary to get the ball rolling on the short sale process with Easley's lender." (Appellant's Brief at 34.) While appellant told Gagle that the $82,000 purchase price was "an offer in order to get the ball rolling with the bank," Gagle never discovered "any proof that [the $82,000 offer] actually went to the bank." (Hearing Tr. at 53, 75.) There was no evidence in the record demonstrating that appellant ever sought approval from Easley's financial lender to do a short sale on the Grandwoods property. The common pleas court stated that, as appellant admitted the purchase contract "was only there to prime the pump with the bank," appellant admitted to his own "willingness to engage in unethical conduct." (Decision and Entry Affirming the June 12, 2019 Adjudication Order of the Commission at 12.)

{¶ 63} Appellant contends the property management agreement did not falsely portray TRST as an owner of the property because TRST was an equitable owner of the Grandwoods property pursuant to the purchase contract. The purchaser " 'under an enforceable contract * * * is regarded in equity as the owner, with legal title held in trust for

him.' " *Blue Ash Bldg. & Loan Co. v. Hahn*, 20 Ohio App.3d 21, 24 (1st Dist.1984), quoting 3 McDermott, Ohio Real Property Law and Practice (3d.1966) 393, Section 28-22A. "An equitable owner is recognized in equity as the owner of the property since 'the real and beneficial use and title belong to him, although the bare legal title is invested in another.' " *Shrock v. Mullet*, 7th Dist. No. 18 JE 0018, 2019-Ohio-2707, ¶ 31, quoting *Levin v. Carney*, 161 Ohio St. 513, 518 (1954).

**{¶ 64}** However, "an executory contract for the purchase of land 'does not convey, or purport to convey, or legally to incumber or affect any estate or interest in land.' " *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, ¶ 21, quoting *Churchill v. Little*, 23 Ohio St. 301, 307 (1872). *See Norris v. Dudley*, 10th Dist. No. 07AP-425, 2007-Ohio-6646, ¶ 31, quoting Black's Law Dictionary at 321 (7th Ed.1999) (defining an executory contract as a " 'contract that remains wholly unperformed or for which there remains something still to be done on both sides' "). Thus, " 'as a general rule, the purchaser, under a contract for the sale of land, before conveyance, has "neither a legal nor equitable right, as against the seller, until he pay the purchase money." ' " *HIN, L.L.C.* at ¶ 21, quoting *McCombs v. Howard*, 18 Ohio St. 422, 436 (1868), quoting 1 Hilliard, The Law of Vendors and Purchasers of Real Property (1858) 9. *See also Coggshall v. Marine Bank Co.*, 63 Ohio St. 88 (1900), paragraph one of the syllabus (stating that the "interest of the vendee of land, before conveyance, is an equitable estate in the land, equal to the amount of the purchase money paid"); *McCombs* at 436 (observing that the seller "held title in trust for the price agreed to be paid for the land," and "[s]ince, then, the price remained wholly, or substantially unpaid, [the seller], at the time of the attachment, held both the legal and equitable title to the land").

**{¶ 65}** TRST never paid any portion of the $82,000 purchase price to Easley. Accordingly, TRST was not an equitable owner of the Grandwoods property when Easley signed the May 26, 2016 property management agreement. Thus, the property management agreement falsely portrayed TRST as an owner of the Grandwoods property.

**{¶ 66}** Appellant contends the last part of Charge 3, stating that the property management agreement permitted Alliance Home Services to overcharge Easley for services, was not supported by reliable, probative, or substantial evidence. The May 26, 2016 property management agreement granted Real Estate Stars Property Management

the authority "[t]o make or cause to be made repairs" to the Grandwoods property. (State's Ex. J.) The agreement specified that "[f]ees for said repairs shall be obtained from contractors within the Realty Alliances network." (State's Ex. J.) The Realty Alliances network consisted of a list of contractors selected by appellant. Easley stated that he was never given an "opportunity to look at the contractors" or "see what the cost" would be before work was performed at the Grandwoods property. (Hearing Tr. at 130.) Easley eventually received an $8,033.72 invoice from Alliance Home Services for repairs allegedly done to the Grandwoods property.

{¶ 67} Appellant asserts this portion of Charge 3 fails because there was no evidence demonstrating whether the charges from Alliance Home Services were normal and customary. However, this portion of Charge 3 concerned the terms of the property management agreement, not the actual charges for the repairs. Appellant further asserts this portion of Charge 3 fails because the property management agreement referenced only the Realty Alliances network and not Alliance Home Services. However, by obligating Easley to use only contractors from within appellant's Realty Alliances network, the agreement permitted any contractor from within that network to overcharge Easley for services. Appellant informed the hearing examiner that Alliance Home Services was a contractor. Thus, the property management agreement permitted Alliance Home Services to overcharge Easley for repairs done to the Grandwoods property. The Commission could rely on its expertise of the real estate industry to find that the terms of the property management agreement which benefitted appellant's various companies at Easley's expense failed to maintain high standards of professional conduct and created an appearance of impropriety in violation of Section I, Article 1 of the Canons of Ethics.

{¶ 68} The common pleas court did not abuse its discretion in finding the Commission's adjudication order was supported by reliable, probative, and substantial evidence and in accordance with law as to Charge 3. Appellant's fifth assignment of error is overruled.

{¶ 69} Appellant's sixth assignment of error asserts the common pleas court erred in finding the Commission's adjudication order was supported by reliable, probative, and substantial evidence and in accordance with law as to Charge 4. Charge 4 provided as follows:

Between on or about April 25, 2016 and on or about September 1, 2016, you failed to maintain high standards of professional conduct and integrity in dealings with members of the public, or you failed to avoid the appearance of impropriety as a licensee by and through your agreements with Jared Gibbons related to the selling, purchasing, managing, leasing and/or repairing of the subject property. This conduct includes:

Failing to disclose the true ownership of the subject property

Failing to disclose that the subject property was the subject of an Exclusive Right to Sell Agreement and that the tenant would be responsible for showing the property

Threatening eviction when the tenant refused to show the subject property

Accordingly, you violated Ohio Revised Code Section 4735.18(A)(6), misconduct as that section incorporates the Canons of Ethics for the Real Estate Industry, Section 1, Article I.

(State's Ex. A, Notification of Formal Hearing.)

{¶ 70} Appellant asserts the Commission's conclusion he committed the violation stated in Charge 4 was contrary to law as the hearing examiner did not make a conclusion of law specific to Charge 4. The hearing examiner concluded that appellant "committed the violations as alleged in the Notification of Formal Hearing." (Hearing Examiner Report at 14.) Thus, the hearing examiner necessarily concluded that appellant committed the violation set forth in Charge 4. Moreover, as the common pleas court in "deciding an administrative appeal * * * must give consideration to the entire record before the [C]ommission," any "alleged deficiency by the [C]ommission in failing to set forth the reasons" for its decision does not "impair the common pleas court's function." *Beef & Beer Keowee v. Liquor Control Comm.*, 10th Dist. No. 97APE09-1272 (Aug. 20, 1998). *See also Rutledge v. Ohio Dept. of Ins.*, 8th Dist. No. 87372, 2006-Ohio-5013, ¶ 31. The common pleas court independently reviewed the record and found the violation in Charge 4 was supported by reliable, probative, and substantial evidence and in accordance with law.

{¶ 71} Appellant contends he did not fail to disclose the true ownership of the Grandwoods property to Gibbons, as Gibbons was aware appellant did not own the

property when Gibbons signed the lease. Gibbons explained that when he went to appellant's office to sign the lease, Forrester initially "said that [appellant] owned the property, but then she changed really quick and went to the property's in closing * * *. She said, 'Well, it's going to close in the next day or two.' " (Hearing Tr. at 189.) Appellant then "popped his head in and said, 'The only way it wouldn't close is if I died.' " (Hearing Tr. at 189.) Gibbons asked Forrester to write the words "pending closing" next to her name on the lease. (State's Ex. M.) However, Gibbons was "told that if it didn't close, that [he] would be notified, and [he was] never notified." (Hearing Tr. at 228; State's Ex. M.) Thus, Gibbons stated that "as far as [he] knew, [appellant] owned the property." (Hearing Tr. at 216.) Gibbons explained that it was not until the middle of June 2016 when he did his "[own] investigating to see who owned the property" and saw Easley listed as the owner on the Franklin County Auditor's website. (Hearing Tr. at 217.)

{¶ 72} Thus, while Gibbons was aware appellant did not own the Grandwoods property on the day Gibbons signed the lease, appellant never told Gibbons that Easley owned the property. Appellant's statements caused Gibbons to believe that appellant became the owner of the property shortly after Gibbons signed the lease. Gibbons independently discovered that Easley owned the property. Accordingly, the evidence supported the Commission's conclusion that appellant failed to disclose the true ownership of the property to Gibbons.

{¶ 73} Appellant states the lease agreement "belied" the conclusion that he committed misconduct by failing to disclose to the tenants that they would be responsible for showing the property. (Appellant's Brief at 42.) In the lease, the tenants "agree[d] that Lessor, Lessor's agents and or employees, may enter the Premises at any reasonable time to inspect, repair, or show the Premises to prospective Lessees, etc." (State's Ex. M, Lease Agreement at section 7.) Thus, while the lease informed the tenants that TRST could enter at a reasonable time to show the property, the lease did not inform the tenants they would be responsible for showing the property. Gibbons testified that appellant initially did not tell him the Grandwoods property "was still actually up for sale" or that Gibbons "would have to [show the property]." (Hearing Tr. at 216, 227.) Gibbons explained that he and Krichbaum were eventually "asked to show [prospective purchasers] the property," noting "[w]e were asked to allow them in and show them the property." (Hearing Tr. at 244.)

Gibbons testimony demonstrated that appellant failed to inform the tenants they would be responsible for showing the property.

{¶ 74} Appellant asserts the portion of Charge 4 stating that appellant committed misconduct by failing to disclose the exclusive right to sell contract to the tenants was contrary to law, as there is no statutory provision in Ohio obligating a landlord to disclose the existence of a listing agreement to a tenant. However, the Commission determined appellant violated the Canons of Ethics for the Real Estate Industry by failing to disclose the exclusive right to sell contract to the tenants, not some independent statutory provision. We defer to the Commission's conclusion that appellant's failure to disclose the exclusive right to sell contract violated the standards of practice for the real estate industry.

{¶ 75} Appellant asserts the Commission's finding he committed misconduct by threatening to evict the tenants when the tenants refused to show the property was contrary to law, because a tenant may be evicted for refusing to allow a landlord to enter a property for a showing. *See* R.C. 5321.05(B) (stating that a "tenant shall not unreasonably withhold consent for the landlord to enter into the dwelling unit in order to * * * * exhibit the dwelling unit to prospective or actual purchasers"). Charge 4, however, stated that appellant threatened to evict the tenants when the tenants refused to show the Grandwoods property, not when the tenants unreasonably withheld consent for TRST to enter the property. Gibbons stated that, after he discovered Easley owned the property, a "showing came up" and Gibbons "ignored it." (Hearing Tr. at 218.) Gibbons then "had conversations with [appellant] threatening us to evict us if we didn't show this property." (Hearing Tr. at 218.) Gibbons testimony was reliable, probative, and substantial evidence demonstrating that appellant threatened to evict the tenants when they refused to show the property.

{¶ 76} The common pleas court did not abuse its discretion in finding the Commission's adjudication order was supported by reliable, probative, and substantial evidence and in accordance with law as to Charge 4. Appellant's sixth assignment of error is overruled.

{¶ 77} Appellant's seventh assignment of error asserts the common pleas court erred in finding the Commission's adjudication order in accordance with law as the record indicates that not all members of the Commission reviewed appellant's objections to the hearing examiner's report. R.C. 119.09 provides that, if a party files written objections to

the hearing examiner's report, the "objections shall be considered by the agency before approving, modifying, or disapproving the recommendation."

{¶ 78} " 'An appellate court must presume the regularity of administrative proceedings.' " *Cowans v. Ohio State Racing Comm.*, 10th Dist. No. 13AP-828, 2014-Ohio-1811, ¶ 39, quoting *Houser v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 10AP-116, 2011-Ohio-1593, ¶ 20, 21. Thus, "[w]here the record is silent, we must presume the Commission reviewed objections before adopting the hearing examiner's order, 'absent an affirmative showing to the contrary.' " *Id.* at ¶ 39, quoting *Perry v. Joseph*, 10th Dist. No. 07AP-359, 2008-Ohio-1107, ¶ 20. "The mere fact that the Commission did not explicitly state on the record that it had considered appellant's objections does not mean that it did not consider the entire record of proceedings, including appellant's objections, before rendering its decision." *Id.* at ¶ 40. *See Houser* at ¶ 21; *Howard v. Ohio State Racing Comm.*, 10th Dist. No. 18AP-349, 2019-Ohio-4013, ¶ 37.

{¶ 79} Appellant contends the Commission's adjudication order demonstrates the Commission did not consider appellant's objections, as the order states the Commission "review[ed] the hearing examiner's report and testimony" but does not state the Commission reviewed appellant's objections. (Adjudication Order.) The adjudication order, however, does not affirmatively demonstrate that the Commission did not consider appellant's objections. Notably, at its June 5, 2019 hearing, Commissioner McLinden stated that he had "reviewed the record with [appellant's] objections that he wrote to us" and that the Commission had "gone over the record, very in depth." (Commission Hearing Tr. at 10-11.) Presuming regularity in the administrative proceedings, we find the Commission complied with its R.C. 119.09 obligation to consider appellant's objections to the hearing examiner's report. Appellant's seventh assignment of error is overruled.

{¶ 80} Having overruled appellant's seven assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*


KLATT and BEATTY BLUNT, JJ., concur.

_____